NO. 24-12907

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Plaintiff/Appellant Teryl James

vs.

Defendant/Appellee FedEx Freight, Inc.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION
CASE NO.: 2:21-cv-01395-CLM

## APPELLANT'S REPLY BRIEF

SIDNEY M. JACKSON
NICKI L. LAWSEN
SAMUEL FISHER
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, LLC**
301 19th St. North
Birmingham, AL 35202
Tel:(205) 314-0500
Fax: (205) 254-1500
sf@wigginschilds.com
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

*Attorneys for Appellant*
*Teryl James*

February 28, 2025

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Counsel for the Appellant certifies that the following persons or entities have

an interest in the outcome of this matter:

1. FedEx Freight, Inc., defendant

2. Fisher, Samuel, counsel for plaintiff

3. Jackson, Sidney M., counsel for plaintiff

4. James, Teryl, plaintiff

5. Lawsen, Nicki L., counsel for plaintiff

6. Maze, Hon. Corey L., Judge, United States District Court for the Northern District of Alabama

7. Raleigh, Rich, counsel for defendant, FedEx Freight, Inc.

8. Snook, Donald H., counsel for defendant, FedEx Freight, Inc.

9. Wiggins Childs Pantazis Fisher & Goldfarb, LLC, counsel for plaintiff

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ................................................................. ii

TABLE OF CONTENTS ......................................................................... iii

TABLE OF CITATIONS .........................................................................iv

INTRODUCTION....................................................................................1

ARGUMENTS AND AUTHORITIES......................................................3

    I.    The district court committed reversible error by ruling that Mr.
James failed to dispute FedEx's facts…………………………….3

    II.    FedEx's assertion that Mr. James's FMLA interference claim is
"unpled" is incorrect...........................................................................6

    III.    Mr. James has shown that he was entitled to FMLA leave prior to
the birth of his child. ..........................................................................9

    IV.    FedEx did interfere with Mr. James' rights under the FMLA and
engage in retaliation. ………………………….…………………11

    V.    Mr. James was prejudiced by FedEx's interference with his FMLA
rights. …………………………………….…………………13

    VI.    The record is replete with genuine issues of material fact as it
relates to Mr. James' discipline due to his FMLA-qualifying
circumstances..……………………………………………………16

    VII.    FedEx's reason for terminating Mr. James reeks of pretext…...17

    VIII.  Mr. James was qualified for his job at the time of his
termination……………………………………………..…………21

CERTIFICATE OF COMPLIANCE ………………………………….25

CERTIFICATE OF SERVICE ...........................................................26

# TABLE OF CITATIONS

## Cases

*Bostock v. Clayton Cnty*., 590 U.S. 644 (2020)……………………………..…….20

*Burrage v. United States*, 571 U.S. 204, 211-12 (2014) ...………………………..20

*Herren v. La Petite Acad., Inc.*, No. 22-11499, 2023 U.S. App. LEXIS 19524 (11th Cir. 2023) …………………………….…………………………………17,18,19

*Johnson v. Oasis Refreshment Servs.*, No. 8:14-cv-1598-T-30AEP, 2014 U.S. Dist. LEXIS 185241, at *2-3 (M.D. Fla. Sept. 11, 2024) …………………..……8,9

*Killian v. Yorozu Auto. Tenn. Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) ....................15

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ...…….….…3,4,5,6

*Mayes v. Enpro Assocs., LLC*, 2022 U.S. Dist. LEXIS 197146, at *24-25 (N.D. Ga. Mar. 1, 2022) ...........................................................................................8

*Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 n.1 (11th Cir. 2006*) .....*24

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) ...........................................................................8

*Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241, 1243 (11th Cir. 2021) ...................................................................................... 8,9,13,14,15

*Sexton v. Mangiaracina*, 657 F. App'x 928, 931 (11th Cir. 2016*) …………*.………24

*United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) …………….…………………….6

*Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016)......15

*Wahl v. Seacoast Banking Corp.*, 2011 U.S. Dist. LEXIS 24115, at *22 (S.D. Fla. Mar. 9, 2011) ........................................................................... 10,15,18

*Wai v. Fed. Express Corp.*, 461 F. App'x 876, 882-83 (11th Cir. 2012)………….10

iv

*Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) ......................20

*White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1199-1200 (11th Cir. 2015)……………………………………………………………………………………...6,7

*Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1247 (11th Cir. 2016) …………….5,6

*Williams v. Wal-Mart Assocs.*, 2021 U.S. Dist. LEXIS 131652, at *14 (Jul. 15, 2021) ....................................................................................................................22

## Statutes

29 C.F.R. §825.113(a)(1) ........................................................................................11

29 C.F.R. §825.115(b) ......................................................................................10,11

## Rules

Fed.R.Civ.P.8(a)(2) ...............................................................................................7,8

Fed. R. Civ. P. 56(c) ……………………………..………………………….3,4,5

## Introduction

At the outset, it is important to note that FedEx's responsive brief demonstrates clear misunderstandings as it relates to Mr. James' arguments. For example, FedEx continually argues that Mr. James' FMLA interference claim must fail because he cannot point to any missed appointment. However, Mr. James ***has never*** based his FMLA interference claim off such allegations. Rather, Mr. James' argument is ***and always has been*** that FedEx is liable for FMLA interference because it did not notify him of his rights and the fact that he could have utilized FMLA during the relevant time period it was needed. However, despite being made aware of health emergencies concerning Mr. James' wife and unborn child, at no point did FedEx tell Mr. James of his FMLA rights or that he could apply for FMLA. Instead, FedEx attempted to punish Mr. James each time he completed his shift and needed to get home to his wife who was experiencing ongoing, significant complications related to their pregnancy.

Indeed, FedEx would have this Court believe that Mrs. James experienced absolutely no health emergency/complication prior to having an emergency inducement to give birth to a severely ill and under-developed child – born three (3) months premature. Mrs. James and their son are lucky to be alive. Had he been aware, Mr. James would have applied for FMLA leave to use during such a precarious time. Instead, FedEx continually punished Mr. James despite being well-

1

aware of his wife's condition and the high-risk pregnancy. Quite simply, FedEx interfered with Mr. James' FMLA rights when it failed to provide him notice of potential FMLA coverage and, instead, used his FMLA-qualifying events as a reason for his termination. Moreover, there is no dispute that on the same day after he received the FMLA approval email, FedEx's final decisionmaker made the decision to terminate Mr. James – even before he had completed his internal investigation concerning Mr. James. The question begs to be asked why did FedEx's decisionmaker rush to the termination decision hours after he received notice Mr. James had been approved for FMLA use. These proximities cannot be ignored.

On June 25, 2020 and July 1, 2020[1], Mr. James notified his supervisor, Sadiou Macalou, that he needed to leave at the end of his shift to care for his wife, who was undergoing serious complications as it related to her high-risk pregnancy—complications that are supported by the ***undisputed*** evidence that the baby was born ***approximately three months premature***. It is further undisputed that Mr. James was never told he could apply for FMLA coverage during this time period, despite making FedEx well-aware of his wife and unborn child's condition. On each occasion, before he left after completing his shift, Mr. James made Mr. Macalou

---

[1] FedEx asserts that the night of July 1, 2020 was the night that resulted in Mr. James' termination. However, the record does not confirm ***which*** night this interaction occurred—July 1st or July 2nd. Notably, during John Hodge's investigation into the matter, Operations Supervisor Tom Brewer stated that the incident occurred on the night of July 2, 2020. (Doc. 44-1, p. 76).

2

aware he needed to leave due to his wife's condition. At no point did Macalou simply tell Mr. James about his FMLA rights or send him to a FedEx FMLA specialist.

## <u>Arguments and Authorities</u>

### I. The district court committed reversible error by ruling that Mr. James failed to dispute FedEx's facts.

The district court determined that, because Mr. James did not rebut FedEx's facts in a separate section of his brief, he "violated Rule 56(c) and the court's initial order." (Doc. 64, p. 3). FedEx represents to this Court that the applicable standard of review is an abuse of discretion—however, that is in direct contravention of the relevant law. Additionally, even under an abuse of discretion review, the district court still committed reversible error.

To begin, FedEx attempts to use *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291 (11th Cir. 2009) to justify the district court's actions. However, this attempt is sorely misplaced. In *Mann*, the issue was the plaintiffs' violation ***of the district court's local rule, not an initial order***. *Mann*, 588 F.3d at 1302. Moreover, "Plaintiffs' answers were convoluted, argumentative and non-responsive. Defendants' Statement of Material Facts consisted of 65 paragraphs. Plaintiffs' response consisted of 146 paragraphs, many with multiple subparts." *Id.*

Here, Mr. James did no such thing. Rather, Mr. James responded to FedEx's asserted facts by clearly "citing to particular parts of materials in the record" demonstrating the disputes of fact, in accordance with Fed. R. Civ. P. 56(c). (*See*

3

Appellant's Principal Brief, Doc. 16, pp. 13-14). Notably, in *Mann* the problem was that the failure to appropriately address the defendant's facts prevented the court from being able to "identify and organize the issues in the case." *Mann*, 588 F.3d at 1303. Because of the "convoluted" nature of the plaintiffs' response (or lack thereof), the court was unable to determine what exactly was in dispute and whether any evidence existed to support the plaintiffs' position. *Id*. This is in **stark contrast** to the facts of the instant case, where Mr. James ensured to follow the requirements set forth by Fed. R. Civ. P. 56(c).

Also worth mentioning is the fact that the *Mann* plaintiffs "were on notice of the deficiency and took no steps to make corrections." *Mann*, 588 F.3d at 1303. Here, at no point was Mr. James notified of any deficiency. While the district court is correct that FedEx "called out" the format of Mr. James' facts, it was in a request for the court to strike Mr. James' response brief. (Doc. 47). Because the district court accepted Mr. James' brief as written (and because he followed the Fed. R. Civ. P. 56(c) in responding to FedEx's facts), Mr. James stated in his sur-reply that:

> Defendant's reply brief also contains an assertion that this Court should deem Defendant's facts as set out in its motion for summary judgment as admitted, because "Plaintiff did not properly respond to Defendant's Statement of Facts. (Doc. 52, p. 2). However, Defendant has already raised this point and used it as grounds to ask this Court to strike Plaintiff's response brief. (*See* Doc. 47). However, this Court accepted Plaintiff's brief as written. (*See* Doc. 49).

(Doc. 59). Thus, this is **not** a matter where Mr. James was on notice of any alleged deficiencies, like the plaintiff in *Mann*.

4

Instead, in the instant matter, the district court "treat[ed] James as admitting FXF's statements of fact" because Mr. James did not "include in his disputes separately numbered paragraphs that mirrored FXF's stated facts." (Doc. 64, p. 3). This was based on the district judge's initial order that stated nonmovants must include an additional section (but still be subject to the same page limitations as the moving party) wherein each fact asserted by the moving party is addressed or otherwise rebutted. (Doc. 6, Appendix II). Because this is ***an initial order*** and ***not*** a local rule, the standard of review is not abuse of discretion. Rather, because the issue involves a question of law (Fed. R. Civ. P. 56(c)), the standard is *de novo*.

However, even if this Court finds that an initial order is akin to a local rule and the district court's actions are subject to an abuse of discretion standard, the district court still erred. Indeed, as *Mann* suggests, Mr. James must show that the district court made a clear error of judgment when it deemed FedEx's facts as admitted—which he can. More specifically, Mr. James clearly responded to the facts of FedEx that he disputed and then went on to "cite[] to particular parts of materials in the record" to demonstrate the existence of the disputes. Fed. R. Civ. P. 56(c). (*See* Appellant's Principal Brief, Doc. 16, pp. 13-14). For the district court to ignore this and treat Mr. James as though he admitted FedEx's asserted facts, constitutes an abuse of discretion. *See Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1247 (11th Cir.

2016) ("A district court abuses its discretion when [. . . ] it applies the law in an unreasonable or incorrect manner.").

In any event however, *Mann* also confirms that a district court ***must*** consider the merits of the motion and take all facts in the light most favorable to the non-moving party—even if the non-moving party did not "oppose" the facts asserted in the motion. *See Mann*, 588 F.3d at 1303 ("Although the statements contained in Whitfield Defendants' Statement of Material Facts are deemed admitted, this court must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact.") (internal citation omitted). *See also United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (articulating that even in the extreme case of an unopposed summary judgment motion, a district court still "must consider the merits of the motion" rather than granting it outright). As explained in Mr. James' Principal Brief (doc. 16) and herein, the district court's opinion clearly shows that it failed to follow this obligation.

## II. FedEx's assertion that Mr. James's FMLA interference claim is "unpled" is incorrect.

Despite Mr. James' complaint ***explicitly*** stating his grounds for an FMLA interference claim, FedEx attempts to represent to this Court that Mr. James "raised for the first time an alleged failure to comply with certain FMLA notice provisions." (Doc. 21, p. 20). FedEx then misconstrues this Court's prior Opinion in *White v.*

6

*Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1199-1200 (11th Cir. 2015) in "support" of its flawed argument.

To elaborate, the employee in *White* filed a short complaint failing to address an FMLA interference argument. *White*, 789 F.3d at 1200. This Court noted:

> Ms. White's complaint was a short three pages. It did not explicitly state an "employer-notice" claim, or a "retaliation" claim, or, for that matter, even an "interference" claim. It stated only one count, which was labeled "Violation of the Family and Medical Leave Act." In total, the complaint's two substantive paragraphs read as follows:
>
> 11.    Defendant violated the Family and Medical Leave Act by refusing to designate leave as FMLA protected leave and terminating [the plaintiff] for taking leave, thereby failing to provide reinstatement under the FMLA.
>
> 12.    The actions of Defendant were willful.

*Id.* Moreover, this Court explained "there was no basis for Beltram to have understood from the complaint that Ms. White was alleging an employer-notice cause of action—i.e., that it failed to give notice to its employees about the FMLA as required under the Act." *Id.* This is simply not the case here.

Indeed, in his Complaint, under "Count III FMLA Interference," Mr. James pleads as follows: "Plaintiff put Defendant on notice that he may need to leave early or arrive late at times to care for his wife. However, ***Defendant failed to explain Plaintiff's rights under the FMLA as it related to intermittent or straight leave to care for his wife***." (Doc. 1, pp. 13-14, Paragraph 56) (emphasis added). As the Federal Rules of Civil Procedure set out, "a complaint must contain a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This requirement means the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (internal quotations and citations omitted).

Indeed, it is well-settled law that allegations that a defendant failed to explain or otherwise notify a plaintiff of his rights under the FMLA once being made aware that the plaintiff has, or needs to care for a spouse who has, a serious health condition are sufficient to properly bring an FMLA interference claim. *See Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021) (reversing a district court's dismissal of an ***FMLA interference*** claim, when the complaint alleged "Defendant never informed Ms. Ramji of her rights under the FMLA, including her right to request and take FMLA leave."); *Mayes v. Enpro Assocs., LLC*, 2022 U.S. Dist. LEXIS 197146, at *24-25 (N.D. Ga. Mar. 1, 2022) (holding that allegations consisting of a defendant's failure to explain to a plaintiff her rights under the FMLA make up a sufficient ***FMLA interference*** claim). *See also Johnson v. Oasis Refreshment Servs.*, No. 8:14-cv-1598-T-30AEP, 2014 U.S. Dist. LEXIS 185241, at *2-3 (M.D. Fla. Sept. 11, 2024) (holding that an ***FMLA interference*** claim that stated "after being put on notice of a potentially qualifying serious medical condition for a qualified employee, Oasis did not notify Johnson of his rights under the

8

FMLA[,]" met the pleading requirements for FMLA interference). Consequently, FedEx's erroneous argument claiming that Mr. James is attempting to raise an "unpled" claim is without merit and should be disregarded by this Court.

### III.    Mr. James has shown that he was entitled to FMLA leave prior to the birth of his child.

The crux of FedEx's argument as to this point rests on its contention that "there is no properly supported evidence to suggest [Mrs. James] was incapacitated during the relevant time frame for purposes of FMLA-qualifying leave." (Doc. 21, p. 31). For the reasons outlined below and in Mr. James' Principal Brief, this contention is belied by the facts and the relevant law.

More specifically, FedEx appears to consider an FMLA "triggering event" as "an actual need to take his wife to her appointments because she was 'incapacitated.'" (*Id.*).[2] This statement demonstrates a fundamental misunderstanding of the law as it relates to circumstances where an employer failed to notify its employee of his rights under the FMLA. Indeed, the legal reality is that the "triggering event" is FedEx's knowledge of Mrs. James' serious health condition, ***not*** a pre-scheduled medical appointment. *See Ramji*, 992 F.3d at 1243 (holding that,

---

[2] FedEx attempts to use *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1434-36 (11th Cir. 1997) for the proposition that "the need to leave early on a few occasions does not establish entitlement to leave under the FMLA." However, this was the same case the district court relied on (for the same proposition) and Mr. James explained how it was inapplicable to the instant matter and, actually contains acknowledgments *in dicta* that supports his case. (*See* Doc. 16, pp. 44-46) (distinguishing *Gay*).

***once it acquires knowledge of an employee's need for FMLA***, an employer has an

obligation to provide notice to the employee of his rights); *Wai v. Fed. Express Corp.*,

461 F. App'x 876, 882-83 (11th Cir. 2012) (affirming jury's finding that FedEx

interfered with an employee's FMLA rights because it had adequate notice of her

qualification for leave); *Wahl v. Seacoast Banking Corp.*, No. 09-81381-CIV-

MARRA, 2011 U.S. Dist. LEXIS 24116, at *23 (S.D. Fla. Mar. 9, 2011) (finding

FMLA interference as a matter of law when the defendant employer failed to inform

the employee experiencing pregnancy complications of her rights to take FMLA).

        The fact remains that FedEx failed to acknowledge—much less effectively

address—Mr. James' evidence entitling him to FMLA leave. As explained in Mr.

James' Principal Brief, Mrs. James was suffering from a high-risk pregnancy and

was unable to care for herself and could not work or drive per her doctor's orders.

(Doc. 39-1, 41:7-15; Doc. 44-3, p. 3; Doc. 44-4, p. 2). Mrs. James' condition was so

dire that each day constituted a danger to both her and the baby. (Doc. 39-2, 65:1-4;

Doc. 44-3, p. 3; Doc. 44-4, p. 2). As a result, Mr. James needed to care for her as

much as possible, as she was unable to do so on her own due to being incapacitated.

(Doc. 44-3, p. 3; Doc. 44-4, p. 2). Despite FedEx's attempts to rewrite the law

regarding FMLA entitlement, Mrs. James indeed had a "serious health condition"

that was FMLA qualifying, based on 29 C.F.R. Section 825.115(b) ("[A]ny period

of incapacity due to pregnancy, or for prenatal care, does qualify as a serious health

condition."); 29 C.F.R. Section 825.113(a)(1) (defining "incapacity" as an "inability to work [ . . . ] or perform other regular daily activities due to a serious health condition[.]").

## IV. FedEx did interfere with Mr. James' rights under the FMLA and engaged in retaliation.

In attempting to justify the district court's actions, FedEx clearly scrambles in search of a supportive legal theory but comes up short. Indeed, FedEx's **_sole_** argument that it was "not interfering with Mr. James' FMLA rights or engaging in retaliation" is that Mrs. James had her premature labor induced on July 2, 2020— which apparently, is supposed to mean that any prior medical emergency she was suffering "is patently untrue and should be disregarded by this Court." (Doc. 21, p. 34). FedEx's attempts to call into question Mr. James' credibility does virtually nothing to further its position.

To elaborate, FedEx's representation of the record evidence is "patently untrue." More specifically, FedEx claims that Mrs. James was **_not_** suffering from pregnancy complications at any time prior to her going into labor on July 2nd, **_despite the plethora of record evidence indicating such_**. Indeed, the evidence shows the following:

- Once he was made aware Mrs. James' pregnancy was high-risk, Mr. James informed FedEx that he would need to start leaving early on certain days. (Doc. 39-2, 70:10-20; Doc. 44-3, p. 3).

- Each time that he could not stay and work overtime due to needing to hurry home to care for his wife, Mr. James would alert his supervisors. (Doc. 44-3, p. 4).

- Mr. James notified Sadiou Macalou ("Macalou") that his wife would be having a medical procedure on June 25, 2020, and he would need to leave at the end of his shift to care for her before the procedure and to transport her. (Doc. 39-2, 77:3-9; Doc. 44-3, Paragraph 16; Doc. 44-4, Paragraph 11).

- During the span of late-June, 2020 and early-July, 2020, Mrs. James was having "progressively worsening pain and discomfort[,]" and needed Mr. James to be home with her to care for her and to seek help if needed. (Doc. 44-4, Paragraph 12).

- On July 1 or July 2, 2020, Mr. James informed Macalou that he could not work overtime because he needed to care for his wife who was having a possible medical emergency. (Doc. 44-3, Paragraph 20).

*Due to these preceding issues, Mrs. James' doctor determined that her pregnancy was in such a dangerous state for both her and the baby, that the baby had to be born at only twenty-eight (28) weeks gestation*. (Doc. 44-3, Paragraph 25). *See Tanner v. Stryker Corp.*, 104 F.4th 1278, 1284 (11th Cir. 2024) ("We must draw all reasonable inferences in favor of the non-movant."). Consequently, FedEx's assertion that "[t]he actions that led to Mr. James' termination occurred the shift before June 30-July 1 when James testified he did not have a specific reason to be home[,] is factually incorrect. (Doc. 21, p. 35) (citing Doc. 39-3, 90:21-91:1).[34]

---

[3] FedEx incorrectly cites this item. To elaborate, page 6 is actually page 90 and page 7 is page 91.
[4] FedEx asserts that the night of July 1, 2020 was the night that resulted in Mr. James' termination. However, the record does not confirm **which** night this interaction occurred—July 1st or July 2nd. Notably, during John Hodge's investigation into the matter, Operations Supervisor Tom Brewer stated that the incident occurred on the night of July 2, 2020. (Doc. 44-1, p. 76).

To be clear, FedEx appears to be relying on Mr. James' deposition, wherein he was merely asked the following:

Q. But let's be clear, this day [July 1st] there was not anything scheduled?
A. There was not, not on the 1st.

(Doc. 39-3, 90:22-91:1).

As can be noted, **_nowhere_** did Mr. James provide **_any sort_** of inconsistency. In response to FedEx's counsel's question, Mr. James testified that Mrs. James did not have a pre-scheduled appointment on July 1st. Mr. James **_never testified_** that Mrs. James was not experiencing pregnancy-related complications that night or the night after. Mr. James further testified that, during that time, Mrs. James was in contact with her doctor due to her condition worsening, such as exacerbating pain. (Doc. 44-3, Paragraph 18; Doc. 44-4, Paragraph 12). Mr. James testified that he needed to get home to Mrs. James to ensure she was okay and to drive her to the hospital, if necessary. (Doc. 44-3, Paragraph 18). As explained above and in Mr. James Principal Brief, such circumstances necessitate FMLA—despite FedEx's continuous attempts to narrow the scope of the FMLA into pre-scheduled medical appointments.

## V.    Mr. James was prejudiced by FedEx's interference with his FMLA rights.

FedEx intends for this Court to believe that its clear violations of FMLA law were nothing more than a "technical violation." (Doc. 21, p. 34). However, this contention is not supported by relevant law. To elaborate, for the first time, FedEx is attempting to differentiate this matter from *Ramji v. Hosp. Housekeeping Sys., LLC*,

13

992 F.3d 1233 (11th Cir. 2021)—despite Mr. James initially raising this case at the summary judgment stage and both FedEx and the district court failing to consider it. (Doc. 45; Doc. 64). For brevity purposes, Mr. James will list each of FedEx's claimed "differences" with *Ramji* in bulletpoint format and will provide his response underneath each bulletpoint:

- Mr. James did not assert an "Employer Notice" claim."

  - As highlighted above and in Mr. James' Complaint, Mr. James did in fact assert this claim, ***in a near verbatim fashion to the Ramji case***. *Compare* Doc. 1, pp. 13-14 Paragraph 56 "Plaintiff put Defendant on notice that he may need to leave early or arrive late at times to care for his wife. However, ***Defendant failed to explain Plaintiff's rights under the FMLA as it related to intermittent or straight leave to care for his wife***[,]" *with Ramji* Complaint, alleging "***Defendant never informed Ms. Ramji of her rights under the FMLA, including her right to request and take FMLA leave***." (emphasis added).

- Mr. James failed to produce any evidence of any appointments, procedures or any other FMLA qualifying reason to leave work without checking with a supervisor on June 25 or July 1.[5]

  - As explained *supra*, evidence of medical appointments to prove entitlement to FMLA leave for these purposes is irrelevant. Notably, the plaintiff in *Ramji* provided no such documentation. Rather, her need from FMLA arose not from medical appointments she needed to get to, but from a need to be off of work due to her condition. *Ramji*, 992 F.3d at 1242-43. As this Court stated in *Ramji*, "[r]equiring ironclad proof is more than summary judgment requires, and in a situation like this one, it

---

[5] FedEx asserts that the night of July 1, 2020 was the night that resulted in Mr. James' termination. However, the record does not confirm ***which*** night this interaction occurred—July 1st or July 2nd. Notably, during John Hodge's investigation into the matter, Operations Supervisor Tom Brewer stated that the incident occurred on the night of July 2, 2020. (Doc. 44-1, p. 76).

would allow an employer to benefit from its failure to comply with the FMLA and provide the required notice." *Id.* at 1247.[6]

- Mr. James was not prejudiced "because he cannot show he actually needed the pre-labor leave. In addition, he knew he could apply for leave, as evidenced by the fact that he applied for leave for the birth of his child."

  - Mr. James has shown that he suffered the most extreme type of prejudice—loss of employment as a direct result of FedEx's failure to inform him that he could utilize FMLA leave to care for his wife. As FedEx even acknowledges, termination is a form of prejudice for FMLA purposes. (Doc. 21, p. 37). Similar to the plaintiff in *Ramji* who was similarly terminated, had Mr. James known he could have taken FMLA during his wife's high-risk pregnancy, he would have done so, precluding him from being in the position of needing to leave work. (Doc. 44-3, Paragraph 12). *See Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) ("Prejudice may be gleaned from evidence that had the plaintiff received the required [] information regarding his FMLA rights, he would have structured his leave differently."); *Killian v. Yorozu Auto. Tenn. Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) ("Finally, by terminating [the plaintiff], [the employer] undoubtedly interfered with her rights under the FMLA."); *Wahl v. Seacoast Banking Corp.*, 2011 U.S. Dist. LEXIS 24115, at *22 (S.D. Fla. Mar. 9, 2011) (finding prejudice when the employer terminated an employee "for violating her probation for additional 'excessive absences' on March 3rd and

---

[6] However, Mr. James **did** provide documentation of Mrs. James' necessary premature labor **on July 2nd**, which a reasonable juror could certainly find supports the fact that Mrs. James was having complications during the hours/days/nights leading up to it. (Doc. 44-1, pp. 82-90). **Moreover, Damien Coleman, another Operations Supervisor at FedEx, even sent an email to Rickey Albert and Sadiou Macalou on July 2, 2020, stating the following**:

> **Teryl called and stated he had to rush his wife to the hospital** ], **he believes he is having the baby early**. Can Somebody can call him because he was asking a about FMLA [sic].

(*Id.* at p. 91) (open bracket in original) (emphasis added). The above email is dispositive evidence that FedEx was aware of an FMLA qualifying event on July 2, 2020, but still made a determination to terminate Mr. James for him needing to leave to care for his wife, whether the incident occurred that day or the day before.

6th, which absences were necessitated by her pregnancy and protected by the FMLA."). Furthermore, Mr. James was given instruction by the service manager, Rickey Albert, on how to apply for FMLA *after* Albert was made aware of the baby's premature birth.[7]

## VI. The record is replete with genuine issues of material fact as it relates to Mr. James' discipline due to his FMLA-qualifying circumstances.

FedEx asserts that, because (1) it enforced the check-in and overtime requirements on all similarly situated freight loaders; and (2) it disciplined Mr. James for leaving without checking in over a year before his wife suffered a high-risk pregnancy, Mr. James "failed to offer evidence that would allow a reasonable juror to find that FedEx disciplined Mr. James because of an anti-FMLA leave motive or intent." (Doc. 21, p. 37). However, this argument is an attempt to hide significant contrary evidence from this Court.

More specifically, as outlined in Mr. James' Principal Brief, it remains *undisputed* that on the night that led to Mr. James' termination, none of the other employees who left with or around the same time as Mr. James were interviewed to determine whether they checked in with the dock supervisor—rather, Mr. James was the only one singled out and targeted—and the only one who was in need of FMLA and who was associated with a disabled person. (Doc. 39-15, pp. 271-272).

---

[7] As explained in Mr. James' Principal Brief, when his wife became pregnant, Mr. James initially asked Albert about FMLA but Albert instructed him to *wait until after his baby was born*.

16

FedEx attempts to gloss over the pertinent fact of one of its witnesses being untruthful by claiming "it is a gross misstatement." (Doc. 21, p. 39). However, a thorough review of the record evidence will indicate the following:

- On July 24, 2020 (approximately three (3) weeks after the night in question), Operations Supervisor Tom Brewer listed other employees who left around the same time as Mr. James (who did not have a disabled relative (doc. 44-3, Paragraph 19)) and admitted: "I cannot honestly verify they did or did not [check in prior to leaving]." (Doc. 44-1, p. 76).

## VII.  FedEx's reason for terminating Mr. James reeks of pretext.

FedEx acknowledges that Mr. James must present evidence showing that FedEx's reason for terminating him was pretext and that but for his FMLA use, he would not have been terminated. (Doc. 21, p. 40). FedEx then goes on to provide a conclusory analysis, opining that because "the decision to terminate Mr. James was made prior to his request for leave and the district court correctly found there is thus no connection between Mr. James' exercising his right to leave and his termination [sic]." (*Id.* at 40-41). In doing so, FedEx attempts to differentiate *Herren v. La Petite Acad., Inc.*, No. 22-11499, 2023 U.S. App. LEXIS 19524 (11th Cir. 2023).

FedEx claims that *Herren* "is not similar because in that case a question remained about when the supervisor made the decision to terminate the employer." (Doc. 21, p. 41). FedEx's basis for this inaccurate conclusion is because Rickey

Albert requested Mr. James' termination prior to his application for FMLA leave.[8]
However, as was the case in *Herren*, the **decision** to terminate Mr. James did not
occur until ***after*** he was approved for FMLA leave. (Doc. 44-1, 94:21-95:13).
Decisionmaker John Hodge even confirmed that, despite his "investigation" not
being completed on July 22nd, he still made the decision to terminate Mr. James
later on the same day Mr. James had been approved for FMLA leave. (*Id*. at 92:11-
93:21). Despite FedEx's attempts to portray otherwise, Albert testified that he merely
provides ***recommendations*** as to whether employees should be terminated and that
Hodge's approval is required in order to effectuate any recommendation—in other
words, Hodge remains the true decisionmaker here. (Doc. 39-8, 36:14-18). Hodge
did not make the decision to terminate Mr. James until after he was notified that Mr.
James had been approved for FMLA leave. As was the case in *Herren*, "a factfinder
could infer reasonably that [Hodge] knew about the FMLA [approval prior to
termination.]" *Herren*, 2023 U.S. App. LEXIS 19524, at *7 ("The record—viewed
in Herren's favor—does not establish beyond dispute that La Petite would have

---

[8] In the event that this Court gives FedEx's explanation any form of credence, pretext remains.
More specifically, FedEx's termination of Mr. James remains pretextual because he was still
terminated due to needing to leave at the end of his shift, which was an FMLA-qualifying event.
*See* 29 C.F.R. Section 825.202(b)(1) ("Intermittent leave…may include leave of periods from ***an
hour or more*** to several weeks.") (emphasis added). *See also Wahl*, 2011 U.S. Dist. LEXIS 24115,
at *26-27 ("Since the undisputed record evidence demonstrates the only reason Wahl was placed
on probation and then fired was for the absences taken for protected FMLA leave, summary
judgment must be entered in favor of Wahl on her claims of FMLA retaliation."). Thus, at best,
FedEx affirmatively retaliated against Mr. James. At worst, a jury must decide.

terminated Herren's employment regardless of her FMLA leave request.").[9] Quite simply, the fact that FedEx's decision-maker, John Hodge, made the decision to terminate Mr. James on the very same day that he (Hodge) received notice of Mr. James' FMLA approval presents a clear material dispute of fact as to whether Hodge considered James' FMLA approval when making the decision to terminate. As such, the FMLA termination claims should survive summary judgment and be tried before a jury.

The next argument FedEx makes is that it "has a wholly independent justification for Mr. James' termination—i.e., repeatedly failing to check-in with a supervisor despite a warning seven days earlier." (Doc. 21, p. 42). First, the warning seven days earlier was completely unjustified and retaliatory. More specifically, Mr. James testified that, not only did he inform Macalou that he needed to care for his high-risk pregnant wife "seven days earlier" but also it was an FMLA qualifying

---

[9] FedEx's citation to the record here (doc. 21, p. 41) is a bit perplexing, considering FedEx cites Doc. 39-8, 62:1-8 for the proposition that "Hodge testified that employee relations advisors do not make the decision to terminate employees." (*Id.*). However, that citation is actually to **Rickey Albert's** deposition, wherein he actually testifies that employee relations advisors can **indeed** make him change his initial recommendation:

Q. Okay. So, have there been times **where you have consulted with ERA**, the employee relations advisor, and said: "Here's what I think we should do. What do you think," and they have, you know, talked you out of or—or even escalated the decision? They've given you their opinion, and you—and you have changed your mind?

A. **Yes**.

(Doc. 39-8, 62:18-63:4) (emphasis added).

19

event due to the fact his wife was suffering from issues related to the pregnancy. (Doc. 44-3, Paragraphs 14-16). However, as explained *supra* and in Mr. James' Principal Brief, this "policy" was ***not*** uniformly applied, and Mr. James was the only one targeted on the night in question. Similarly, each of the cases FedEx attempts to rely on concern a situation where a policy was uniformly applied—not one that was selectively applied to an employee associated with a disabled relative. Indeed, the fact that Brewer confirmed he could not verify if anyone else (outside of Mr. James' protected classes) checked in prior to leaving on the night in question, creates an issue for the jury to decide. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (such adverse employment actions "occurred under circumstances which raised a reasonable inference that [Mrs. James' high-risk pregnancy] was a determining factor in [FedEx's] decision.").[10] Moreover, on each occasion, it is

---

[10] It is worth noting that FedEx misunderstands the Supreme Court's holding in *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). FedEx asserts that *Bostock* holds that "the but-for test 'directs us to change one thing at a time and see if the outcome changes.' If it does, the isolated factor is a but-for cause. And if it does not, the isolated factor is not a but-for cause, and all of the other factors, taken together, are sufficient." (Doc. 21, p. 40). However, *Bostock* does not state this. Rather, *Bostock* holds:

> Often, events have multiple but-for causes. So, for example, if a car accident occurred ***both*** because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision. *Cf. Burrage v. United States*, 571 U.S. 204, 211-12 (2014). [T]he adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some ***other*** factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.

*Bostock*, 590 U.S. at 656 (emphasis in original). Thus, under *Bostock*, even if, assuming *arguendo*, FedEx did apply the "check-in" policy uniformly, the evidence also shows that (1) the decision to

undisputed that Mr. James spoke with Macalou, the operations supervisor, prior to leaving the worksite. (Doc. 44-3, Paragraphs 15-16, 18-19). Indeed, on each occasion, FedEx claims Mr. James "violated" the policy (June 25th and July 1st/2nd) the record evidence shows that Mr. James not only spoke with Macalou before leaving but also ***made him aware of the FMLA qualifying events*** that necessitated his need to get home to his wife and unborn child. (*Id.*). Despite explaining the emergency situations on each of those days, Macalou refused to let Mr. James leave without punishment or disciplinary action, which ultimately led to Mr. James' termination. (*Id.*).

## VIII.  Mr. James was qualified for his job at the time of his termination.

FedEx attempts once again to call into question Mr. James's credibility and misrepresent the record evidence in this case. More specifically, FedEx asserts that Mr. James is not a qualified individual for purposes of the ADA because its attendance policy "specifically provides that employees must not leave early without permission." (Doc. 21, p. 44). However, FedEx conveniently ignores testimony that there was "no dispute" that Mr. James completed his scheduled shifts on July 1st and/or 2nd. (*See* Doc. 44-1, 81:8-19). FedEx points to ***no*** evidence even suggesting

---

terminate Mr. James was ***not*** made until *after* he was approved for FMLA leave; and (2) his alleged violations of that policy were based on FMLA-qualifying events. As such, while a policy violation may be one but-for cause, Mr. James' emergent circumstances were another—rendering the law to be triggered.

that Mr. James could not fulfill his job duties. The only "evidence" FedEx attempts to point to is its attendance policy—however, that is in relation to leaving a shift early, not at the end of one's shift. (*See* Doc. 39-7, p. 3) ("Leaving work early is defined as clocking out or leaving work prior to the end of the employee's scheduled work shift."). Despite FedEx's attempts to represent that Mr. James clocked out before 2:30a on (FMLA qualifying) occasions, ***that did not mean his shift had not ended***. Rather, Mr. James' shifts ended once his assigned trailers had been completed. (Doc. 44-3, Paragraph 2; Doc. 34-6, 43:16-21).[11] Typically, this was around 2:30a but not always. As John Hodge testified, there is "***no dispute***" that Mr. James completed his scheduled shift on July 1st and/or 2nd. (Doc. 44-1, 81:8-19). *See Williams v. Wal-Mart Assocs.*, 2021 U.S. Dist. LEXIS 131652, at *14 (Jul. 15, 2021) (finding that the plaintiff was a qualified individual because the defendant did "not otherwise show[] that plaintiff could not fulfill his job duties on the days he had to leave early to care for his father[.]").

FedEx then claims that it has presented evidence that the "check-in" policy was uniformly applied—yet again though, FedEx is conveniently omitting the crucial evidence that indicates Brewer stated he "cannot honestly verify if [the other employees with whom Mr. James was walking out] did or did not [check in]." (Doc.

---

[11] Tom Brewer testified that supervisors were able to determine whether employees had completed their assigned trailers by utilizing a manifest. (Doc. 34-6 100:21-101:3).

44-1, p. 76). Mr. James has **unequivocally** testified that he was the **only one** from that group who was singled out and he was the **only one** who engaged in protected activity and/or had a disabled relative. (Doc. 44-3, Paragraph 19). If this policy was indeed uniformly applied, as FedEx wants this Court to believe, Mr. James would not have been the only employee singled out for allegedly not checking in and every other employee would have been accounted for. Indeed, **at the very least**, this presents a genuine dispute of material fact as to whether this policy was indeed uniformly applied.

FedEx then incorrectly represents to this Court that "Mr. James admitted under oath that his claim that he needed to leave at 1:30a in order to take his wife to 4a appointments is false." (Doc. 21, p. 45). However, a thorough review of the record citation made by FedEx (doc. 34-13, p. 11) will show that contention to be utterly false. The reality is, Mr. James never admitted anything said under oath was false. Rather, Mr. James amended his discovery responses to correct (understandably) mistaken appointment start times of which he was not the patient. Notably, at no point during this entire litigation did Mr. James leave at 1:30a to take his wife to the doctor. Indeed, each time Mr. James suffered an adverse employment action, it was **after** he had completed his scheduled shift. (Doc. 44-1, 81:8-19). By making such an unfounded accusation, FedEx is merely attempting to use a "red herring"

approach to distract from its lack of evidence supporting its entitlement to summary judgment.[12]

## <u>Conclusion</u>

For the foregoing reasons, and for the reasons outlined in his Principal Brief, Appellant/Plaintiff Teryl James asks this Court to reverse the lower court's decision that granted summary judgment in favor of Appellee/Defendant Fedex and to allow this case to move forward to a trial by jury of the material disputes of fact.

---

[12] As a final note, assuming *arguendo* there are any issues that concern inconsistencies from Mr. James, such issues are for a jury to decide, not a court on summary judgment. *See Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 n.1 (11th Cir. 2006) ("Credibility determinations at the summary judgment stage are impermissible."); *Sexton v. Mangiaracina*, 657 F. App'x 928, 931 (11th Cir. 2016) (holding that, aside from "facts that could not have possibly been observed or events that are contrary to the laws of nature[,]" other "inconsistencies present a credibility issue which is something that we cannot decide at the summary judgment stage.").

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that, in accordance with FRAP 32(a)(7)(B), this Brief complies with the type-volume limitations established by this Court. This Brief contains 5,604 words.

*/s/Nicki L. Lawsen*
OF COUNSEL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 28th day of February, 2025, I electronically transmitted the foregoing with the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

<u>*/s/Nicki L. Lawsen*</u>
OF COUNSEL